```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| PETER T. BILINSKY, | : |
|   Petitioner, | : HONORABLE JOSEPH E. IRENAS |
| v. | : |
|  | : CIVIL ACTION NO. 04-5379(JEI) |
| THE FEDERAL BUREAU OF PRISONS, HARLEY G. LAPPIN, JOHN NASH, | : |
|  | : **OPINION** |
|   Respondents. | : |

**TO:**

PETER T. BILINSKY, Petitioner Pro Se
#57805-066
FCI Fort Dix
P.O. Box 1000
Fort Dix, N.J. 08640

UNITED STATES ATTORNEY'S OFFICE
U.S. Department of Justice, District of New Jersey
402 East State Street, Room 430
Trenton, N.J. 08608
          Attorneys for Respondents

**IRENAS**, Senior Judge

    Currently before the Court is a motion by Petitioner, Peter T. Bilinsky, to reopen his petition for a Writ of Habeas Corpus (the "Petition"). For the reasons set forth below, the motion will be granted and the Petition will be denied.

1

I.

On January 8, 2004, Petitioner was sentenced to a term of imprisonment of twenty-four months in the Eastern District of Pennsylvania. Petitioner had entered a plea of guilty, on October 8, 2003, to one count of bank fraud. He self-surrendered on January 22, 2004. Petitioner is currently serving his sentence at the Federal Correctional Institution, Fort Dix. With good conduct time credit, Petitioner's projected statutory release date is October 18, 2005.

Sometime in the summer or fall of 2004, Petitioner's Unit Team, which is responsible for making recommendations for Community Confinement Center ("CCC") placements, scheduled his placement in a CCC facility for August 17, 2005. On November 3, 2004, Petitioner filed a Petition for Writ of Habeas Corpus with this Court requesting relief in the form of an order directing the Bureau of Prisons ("BOP") to reconsider his CCC placement, pursuant to 18 U.S.C. § 3624(c), as interpreted (prior to December 20, 2002) by BOP Program Statement 7310.04 ("BOP PS"). *See, e.g.*, *Scott v. Federal Bureau of Prisons*, 317 F. Supp. 2d 529 (D.N.J. 2004).

By Order dated December 8, 2004, this Court denied the Petition for failure to exhaust. Petitioner has since proceeded through administrative review, seeking reconsideration of his scheduled CCC placement and requesting that he receive additional

2

time at his CCC placement (i.e. an earlier departure from FCI-Fort Dix).

On May 25, 2005, Petitioner filed a motion to reopen his case. He avers that he has exhausted all available administrative remedies. In addition, he asserts that time is of the essence, and claims that with a fast-approaching placement date of August 17, 2005, filing a new petition would preclude any meaningful results.

## II.

The challenge in the Petition turns on the interpretation of two sections of title 18. Section 3621(b) provides:

> (b) Place of imprisonment.-- The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability. . . ., that the Bureau determines to be appropriate and suitable, considering--
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence [that articulated the purpose behind the sentence or offered a recommendation for placement] . . .
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Section 3621(b) also advised that "there shall be no favoritism given to prisoners of high social or economic status."

3

The second statute, § 3624(c) provides:

(c) Pre-release custody.-- The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  The authority provided by this subsection may be used to place a prisoner in home confinement.  The United States Probation System shall, to the extend practicable, offer assistance to a prisoner during such pre-release custody.

Prior to December, 2002, BOP P.S. 7310.04 provided that a prisoner might receive CCC placement up to six months, regardless of the length of his term and without regard to the ten percent limitation contained in § 3624(c).  P.S. 7310.04 was based on a statutory interpretation that had "Section 3621(b) as taking precedence over Section 3624(c) and as including community confinement centers ('CCCs'), or half-way houses, within the definition of 'penal or correctional facilit[ies].'" *Drew v. Menifee*, No. 04-9944, 2005 WL 525449, at *2 (S.D.N.Y. Mar. 4, 2005). Thus, placement was made based on an evaluation of § 3621(b)'s factors and without regard to § 3624(c)'s time limitations.

This practice was halted effective December 20, 2002, as a result of a Memorandum Opinion dated December 13, 2002, issued by the Justice Department's Office of Legal Counsel ("OLC Memo"). The OLC Memo basically concluded that § 3624(c) was in fact a

4

limit on the discretionary authority granted to the BOP by § 3621(b).[1]  The effect of the OLC Memo was that prisoners could be placed in a CCC facility for the lesser of six months *or* ten percent of the sentence (after good conduct time credits had been applied).[2]

Following the change in policy, a flurry of litigation ensued.  A number of courts, including this one, declined to adhere to the conclusions of the OLC Memo.[3]  *See, e.g., Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004) (finding the OLC Memo was an invalid interpretation of statutory provisions); *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004) (same); *Steinbach,* 339 F. Supp. 2d at 628-29 (D.N.J. 2004) (ordering BOP to reconsider placement

---

[1] The OLC Memo interpreted the term "imprisonment" in § 3621(b)'s phrase "to designate the place of [a] prisoner's imprisonment" to exclude CCC placement.  Thus, under the OLC Memo's interpretation, the BOP lacked the authority to place an inmate in CCC under § 3621(b).  The OLC Memo indicated that the BOP's authority to designate CCC placement was found only in § 3624(c), which mandates placement in a setting that will ease the transition from prison for the lesser of six months or the last ten percent of the inmate's term.

[2] Another effect of the change in policy was that certain prisoners who were sentenced to short terms could not serve their entire sentence in a CCC facility.  Prior to the December, 2002 Memo, the BOP's interpretation of the two statutes allowed inmates to serve part or all of a term of imprisonment in a CCC facility.

[3] Most of the cases challenging the OLC Memo made one or more of the following arguments: (1) the implementation of the OLC Memo violates the Ex Post Facto Clause of the Constitution; (2) the policy implementing the OLC Memo is a "rule" that violates the Administrative Procedures Act ("APA"), because it was promulgated without notice and comment; (3) the OLC Memo and the BOP's shift in policy relies on a misinterpretation of the statutory authority; and/or (4) the OLC Memo should not receive any deference under *Chevron* or *Skidmore.  See, e.g., Franceski v. Bureau of Prisons*, No. 04-8667, 2005 WL 821703, at * 2 (S.D.N.Y. Apr. 8, 2005); *Steinbach*, 339 F. Supp. 2d at 629 (D.N.J. 2004).

without regard to OLC Memo); *Pinto v. Menifee*, No. 04-5839, 2004 WL 3019760, at *4-5 (S.D.N.Y Dec. 29, 2004) (finding application of OLC Memo constituted invalid statutory interpretation and violation of the APA); *Iacaboni v. United States*, 251 F. Supp. 2d 1015, 1018 (D. Mass. 2003) (finding that change in BOP policy terminating prior practice of serving entire sentences in CCC placement violated the Ex Post Facto Clause). *But see Esposito v. Ashcroft*, No. 04-138, 2005 WL 119872 (N.D. W.Va. Jan. 14, 2005); *Cohn v. Federal Bureau of Prisons*, 302 F. Supp. 2d 267 (S.D.N.Y 2004). These courts generally ordered the BOP to reconsider CCC placements using the standard applied prior to the December, 2002 OLC Memo.

The BOP responded with proposed new regulations in August, 2004, which, at least in part, attempted to deal with the judicial critiques of its application of the OLC Memo. *See* Community Confinement, 69 Fed. Reg. 51,213 (Proposed Aug. 18, 2004). The proposal stated that the BOP was exercising its discretion by limiting CCC placement to the last ten percent of an inmate's sentence, not to exceed six months. The proposal remained open for comment until October, 2004, and became final on January 10, 2005. Community Confinement, 70 Fed. Reg. 1659 (Jan. 10, 2005) (To be codified at 28 C.F.R. § 570.21).

The new regulations became effective February 14, 2005 (the "February 14, 2005 Rule"), and amended the Code of Federal

Regulations. Specifically, the amended language states that: "The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a). The amended rule allows for exceptions only when other statutes allow for placements exceeding six months or ten percent of the sentence. § 570.21(b) (providing examples of potential exceptions - residential substance abuse treatment program, 18 U.S.C. § 3621(e)(2)(A), and shock incarceration program, 18 U.S.C. § 4046(c)).

### III.

Respondents have asked this Court to deny Petitioner's motion because a habeas petition is not the proper vehicle by which a prisoner may complain of the conditions of confinement during the pre-release period. In past opinions this Court has recognized that a habeas petition is not an appropriate filing in this context, but then converted the case to one seeking injunctive relief. *See, e.g., Steinbach v. Federal Bureau of Prisons*, 339 F. Supp. 2d 628 (D.N.J. 2004).

Even were we to treat the Petition as one seeking injunctive relief under 28 U.S.C. § 1361, such relief is not warranted in this case. We will proceed on the assumption that if a habeas petition is not the proper filing, the instant petition could be

7

converted into an appropriate filing.[4]

IV.

Our analysis of Petitioner's request that the BOP provide him with a lengthier CCC placement begins with a fundamental basic point: the BOP's policy pre-December, 2002, under the OLC Memo, and under the February 14, 2005 Rule, did not automatically provide six months CCC placement for each inmate. In other words, a six month placement was never guaranteed.

The purpose of a CCC placement is to help the inmate with the transition from prison life. Clearly, certain prisoners need more assistance with the transition than others. Those prisoners who are serving long sentences, who are uneducated or lack marketable job skills, who suffer from mental or physical ailments, or who lack any type of resources or support network

---

[4] There is a circuit split on which motion an inmate should bring to contest his CCC placement. The Second Circuit has held that petitions under § 2241 are an acceptable method to challenge the validity of the December, 2002 OLC Memo, and more recently the February 14, 2005 Rule. *See, e.g., Pimentel v. Gonzalez*, 367 F. Supp. 2d 365, 370 (E.D.N.Y. 2005); *Franceski v. Bureau of Prisons*, No. 04-8667, 2005 WL 821703, at *3-4 (S.D.N.Y. 2005). The Seventh Circuit, however, held that an inmate must seek review of a CCC placement by means of an ordinary "civil suit," and cannot proceed under the habeas statute. *Richmond v. Scibana*, 387 F.3d 602 (7th Cir. 2004) (finding that the inmate was in fact challenging the type of custody, and not the length or fact of custody itself, and so the case should have been brought under the APA). The Third Circuit has drawn a firm line separating habeas petitions from § 1983 actions, albeit not precisely in the CCC placement context. Under Third Circuit jurisprudence, a habeas petition is not the appropriate means to obtain a change in the conditions of confinement or the location of confinement. *See Beckley v. Miner*, 125 Fed. Appx. 385 (3d Cir. 2005); *Leamer v. Fauver*, 288 F.3d 532, 540-43 (3d Cir. 2002); *Bronson v. Demming*, 56 Fed. Appx. 551 (3d Cir. 2002).

outside prison likely need special support to ease their re-entry into society.  In contrast, inmates like the Petitioner who are serving shorter sentences, for basically white collar offenses, who have assets, family support, education, and vocational skills are less likely to need as much assistance in their transition to from prison to society.

V.

Without commenting on the validity of the OLC Memo or the February 14, 2005 Rule,[5] the Motion to Re-Open will be granted and the Petition will be dismissed.[6]

---

[5] It is worth noting that the February 14, 2005 Rule has already been invalidated by district courts in the Second Circuit and Ninth Circuit.  *See, e.g., Wiederhorn v. Gonzales*, No. 05-360, 2005 WL 1113833 (D. Or. May 9, 2005); *Paige v. United States*, No. 04-247, 2005 WL 949317 (D. Mont. Apr. 22, 2005); *Cook v. Gonzales*, No. 05-09, 2005 WL 773956 (D. Or. Apr. 5, 2005); *Drew v. Menifee*, No. 04-9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005).  *But see Yip v. Federal Bureau of Prisons*, 363 F. Supp. 2d 548 (E.D.N.Y. 2005) (finding that BOP has the authority to categorically exercise its discretion concerning CCC transfer and upholding application of February 14, 2005 Rule).

[6] Respondents have opposed the Motion to Re-Open arguing in part that the Petition has been mooted by the enactment of the February 14, 2005 Rule.  While Petitioner initially challenged the December, 2002 OLC Memo, his eligibility for CCC placement has been considered under the February 14, 2005 Rule.  *See* Decl. of Thomas Mulvey, Unit Manager at FCI-Fort Dix, at ¶ 8.  Since Petitioner is acting *pro se*, and because his claims regarding the December, 2002 OLC Memo are virtually identical to any claims he would assert in opposition to the February 14, 2005 Rule, upon granting the Motion to Re-Open, we will examine the Petition as if it challenged BOP's policy under both the December, 2002 OLC Memo and the February 14, 2005 Rule.  *Cf. Pimentel v. Gonzalez*, 367 F. Supp. 2d 365 (E.D.N.Y. 2005).

Respondents also argued that if the Motion to Re-Open was granted that they should be given the opportunity to further brief the merits of the Petition.  Such an opportunity is not necessary; this Opinion does not evaluate the validity of the February 14, 2005 Rule and the Court will dismiss the Petition after granting the Motion to Re-Open.

Taking into consideration his GCT credit, Petitioner will have served approximately twenty-one months of a twenty-four month sentence, with the last 62 days in a CCC facility.

Petitioner's arguments as to why he needs a CCC placement of more than two months are not persuasive. Petitioner states that he has been married for twenty-eight years and has four children, ranging from twenty-six years old to thirteen years old. Petitioner claims that he has limited vocational skills outside his prior employment field, health care billing, and notes that since his conviction was related to criminal activity in health care billing he will most likely be unable to obtain a position in that field. He also claims that after his incarceration his wife was forced to return to the workforce; she works at their church for slightly more than minimum wage and does not receive benefits. (Petition, at pp. 2-3.) Petitioner's COBRA plan expired in March 2005. (Motion to Re-Open, at p. 10.) Petitioner claims that he and his family face are facing a financial emergency, and additional time in a CCC facility will assist him in addressing with his family's financial condition.

Petitioner's concerns appear very real and his appeals through the administrative process and to this Court are no doubt made in good faith. However, he has not articulated any circumstance that would warrant additional time to ease his re-entry into society.

10

While respectful of the havoc that results following the incarceration of a loved one, the Court reminds Petitioner that the purpose of CCC placement is not to assist family members, but instead to allow the prisoner the opportunity to gradually re-integrate into society.  Many prisoners have ailing or dependent family members, but that situation alone does not justify early release or longer CCC placement.  The focus of CCC placement is on the prisoner and not the needs of his family.

Petitioner's Unit Manager, Thomas Mulvey, who oversaw the review of CCC placement for Petitioner, stated that Petitioner's placement was determined using the February 14, 2005 Rule. (Decl. of Thomas Mulvey, at ¶ 8.)  While Petitioner complains that the administrative process provided only "stock answers," we find that the length of CCC placement would remain unchanged whether or not the BOP was operating under the pre-December, 2002, policy, the policy set forth by the December, 2002 OLC Memo, or the February 14, 2005 Rule.

We conclude that a sixty-two day placement in a CCC facility is appropriate for Petitioner, as we find that he is not the type of prisoner for whom assistance in re-integration is crucial. Compared to the many, many federal prisoners who are truly destitute, uneducated and untrained and who are serving long sentences, Petitioner does not require a six month placement.

Prisoners would certainly like the less rigorous confinement

11

of a CCC and might even get a head start on tasks like finding a job or obtaining insurance.  However, the notion that this type of easier confinement is necessary to aid re-entry is counter-intuitive.  Furthermore, after reviewing many petitions like the instant one, the Court is left with the conclusion that in many cases the issue is not one of helping re-entry into society, but simply providing the inmate with a more favorable form of incarceration.  See *Sandin v. Conner*, 515 U.S. 472 (1995).

V.

For the reasons set forth above, the Court will grant the Motion to Re-Open and dismiss the Petition.  The Court will issue an appropriate Order.


DATE:   6/22/05

          s/*Joseph E. Irenas*
          JOSEPH E. IRENAS
          Senior United States District Judge